All rise. The United States Court of Appeals for the Federal Circuit is now open for discussion. God save the United States, this is Honorable Schultz. We have three arguments this morning and we'll begin with number 13-1663, Planet Bingo v. VKGS. Thank you, Your Honor. May it please the Court, I'm Karen Fouts on behalf of the appellant, Planet Bingo, LLC. The 646 and 045 patents are each directed to patent eligible subject matter and should have been upheld as valid under Section 101. The District Court erred in declaring these patents invalid for three main reasons that I'd like to address this morning. First, the claims recite more than an abstract idea of managing or playing the game of bingo. Second, the claims are not simply directed to the mere recitation of mental steps. And third, the claims do not preempt any fundamental concept. Turning to the first point, each and every claim in the patents requires a computer. We know from all commercials that claims that have ties to a computer are less likely to be abstract and that such ties to a computer are an important indication of patent eligibility. In this case, the claims are detailed and specify what the computer does. For example, Claim 1 of the 646 patent describes eight specific steps that a program in the computer performs. The specification also provides details about this computer program and describes it as including an accounting program, a ticket program, and a verification program. I realize we're several weeks away from what we hope will be some clarifying opinion from the Supreme Court, so it's a little hard to know what the right terms are to talk about this. What aspects of any of the claims, the independent claims I guess, involve the use of a computer to do something that couldn't be done by hand? Well, we believe, Your Honor, that all of the claims involve aspects of using a computer to do things that can't be accomplished, whether in someone's head or on pen and paper. Assume away for the moment, if I can amend the question, assume away for the moment the question of volume. In other words, something that could be done in someone's head if they only had three bingo players at a time. If there were only three bingo players at a time, Your Honor, I guess I would submit that... Because the claims cover, as I understand it, small groups of bingo players as well as large ones. Well, I would respectfully disagree with that, Your Honor. The way that this invention is practiced in the real world... That's probably a side issue. But if you could address Judge Toronto's question with the notion that how would this apply if there were a small group? If it were applied for a small group, I guess I would submit that certain steps might be able to be carried out by writing things down. However, that's certainly not practical in the way that this invention is applied in the real world. When you say certain steps, are there any steps that you don't think could be done by writing them down or in somebody's head if it's only three bingo players? If it's three bingo players? If the computer is still involved, there are... Well, I just want to note, obviously your claim is with the computer, but three bingo players, you said certain steps could be done without a computer. Are there any steps that couldn't be done without a computer with only three bingo players? Well, the fact that the computer itself is involved, I have a hard time separating that from the invention because it's such a critical part of the invention. Well, tell me about those steps that are critically reliant on the computer to do it, that couldn't be done without it. One is, for example, when a player decides that he or she wants to select certain numbers to play in future games of bingo. Once those numbers are set, they are inputted into the computer, and then at the time of playing those numbers, the computer assigns control numbers for each set of bingo numbers that is played. It assigns a validation number for the whole set of numbers as a whole so that it can later be validated against the winning bingo numbers. So I could carry around with me a little book in which I write down the numbers that Judge Hughes prefers, and I have a validation number or a code that I assign to that set of numbers. Why is that not something that I could do with my little book and a pencil? Your Honor, if it was just you, you probably could do that. However, again, this invention, in the real world, it's used in huge bingo halls. These are bingo halls of yesteryear where they were small, for example, in church halls or things of that sort. Today's bingo halls are huge. They are parts of casinos. They involve literally up to 1,000 players at a time. And using this invention in the real world, that's specifically why it was developed, so that clerks could account for all these preselected bingo numbers, that they could assign computer-issued control and validation numbers to these bingo numbers and do so in a way that was secure, that helped minimize tampering, which those were both problems in the prior art, and that helped do so in a way that also meets time constraints that are inherent in these bingo environments. So you can get a vast amount of players playing and get them through the bingo hall, whereas these concepts, these aspects could not have been done before with the prior art. Those are problems with the prior art. And on that point, Your Honor, if I may, we did submit evidence specifically from Mr. Way, who was an inventor of both of the patents in suit, also from Mr. Foreman, and both of these gentlemen testified that these inventions simply cannot be accomplished manually and that the computer was significant to the inventions. And VideoCain did not rebut this evidence, although it submitted attorney arguments saying that the inventions could be accomplished manually. So does your argument depend upon the fact that this invention is intended for thousands of players as opposed to three players?  I think the number could be reduced, but I do understand the point, Your Honor, of three players and how conceivably these steps could be written down on paper. But again, in the real world, that's not what we're looking at. Well, we're also looking at what you actually claimed in your patents, and it doesn't seem to me that you've claimed a system that is only for a large number of players. You've claimed a system that refers to a player selecting at least two sets of bingo numbers, and that seems to encompass the three-player bingo scenario we've been talking about. I see that point, Your Honor. However, of course, we have to read the claims in light of the specification, and the specification is detailed to the extent that it describes this game being played in a hall with players, not just the singular player, but players. And I think we need to take that into account when looking at the claims, and that this invention does cover more than just a singular player. But it does cover a single player, too. I would agree with that, Your Honor. I can get back to my point about the declarations that we submitted and them having not been rebutted by video. On the question of what the presence of the computer adds, we have a series of cases, CyberSource, DealerTrack, Fort Properties, Bancorp, I guess, are the principal ones, before you even get to Alice Bank, in which we've said, essentially, you may not agree with this characterization, we've said, essentially, that simply adding a computer to a process that is otherwise not patentable, that consists of mental steps, doesn't create a patentable invention unless the computer does something which inherently can only be done by a computer, as in there's some kind of, the GPS case, for example, some kind of operation that simply can't be performed, a particular operation can't be performed by the mind. But simply speed and dimension of memory have not been regarded as being sufficient to make a computer implementation of a mental step patentable. How does this case, first of all, do you disagree with that characterization, and second, how does this case fall outside of the line of cases that I just described? Your Honor, I don't disagree with what those cases set forth. I think in this particular instance, we've got a computer that does add significantly more. We've got specific program code that was submitted during prosecution. There are over 150 pages of code, and they provide details as to how this invention is to be performed. But isn't the code, I mean code is often very long to do very simple things, but isn't all that code directed at what ultimately comes down to storing numbers and issuing receipts and so forth, but basically the task of storing numbers and making those numbers readily available to the bingo hall when it wishes to punch out a card and give the player a receipt. Your Honor, that's one aspect of it is storing numbers, but the computer does more than that. It doesn't just store numbers. It issues control numbers for each set of numbers that is selected by the player. Stores numbers and attaches a control number to the stored numbers. Okay, but that's just basically a function of memory, it seems to me. The only reason the computer is used is because a person, when you get up into the thousands, couldn't keep track of all those, and the book would start to get very thick, and it would be cumbersomely slow. But what does the computer add? We think it adds a lot. It aids in reducing security issues that were a problem with the prior art. It helps minimizing tampering, which was another problem with the prior art, and we think that those are critical. The inventors thought that those were critical parts of this invention, which is why they developed this computer program to handle this, and why it took them so long to develop it. If there are no further questions, I'd like to reserve the rest of my time. Thank you, Your Honor. Mr. Underwood. Good morning, Your Honors. May it please the Court. I'm Stephen Underwood, and I'm here with my partner, Matt Gibson, on brief, to talk about this case with you here today. I believe Your Honors properly identified the issue here. We're talking about the claims, not the specification, not the commercial embodiment, the claims. And the claims call for a player in the singular to be involved in this game of bingo, for which various method steps are laid out, both in the system and the method claims, as to how that game is to be played. The advantages that were proffered extensively in their briefs, with regard to the anti-tampering, with regard to the security, with regard to the last-minute buy-in, and in regard to the numbers of players that this invention allegedly allows to happen, simply is not in the claim. Can I ask you this? Yes, sir. You are probably more familiar with the line of cases Judge Bryson just mentioned. I've read them once or twice, Your Honor. Does any of them involve claim language that limits the claim to certain high levels of volume or speed of doing things, or are they all cases in which, while the practical use was high volume or very fast processes, the claims were not limited to that? Well, I mean, I'm not aware of any cases out of the Federal Circuit, Your Honor, but I am aware of a case out of the Supreme Court, Bilski, that talked about hedging, and it dealt with, and I believe in that decision, they talked about the inherent large volumes of transactions that would be involved in the processing of that particular claim, but nevertheless, that did not save that claim. Your recollection is that... It was held in ballot. Yes, right, but your recollection is that the claims in Bilski actually... I believe I've read in one of the cases that there's an inherency in Bilski that it is inherently that it was going to be processing... But Bilski was not a computer-based claim. No, but it was inherent that it was going to be done on a computer. Well, maybe, are you thinking maybe of Ellis Bank, where the parties stipulated that it had to be done, because I don't think there was any... I believe I've read in cases of... The point is, Your Honor, to answer your question directly, I'm not aware of any Federal Circuit case that held simply the number of processes. But I guess what I'm thinking about is whether the problem here could be solved by narrowing the claim. I don't mean in this particular case, but the general problem could be solved by writing claims involving computers that limited the claim to activities at a pace or at a volume that human beings could not do without the computer, or whether the principle is broader than that. Speed and volume don't matter. In order for a computer to change the 101 outcome, there has to be some functionality beyond speed and volume. I think I understand where Your Honor is going at. I guess it would depend upon what the claim included. Here, we have just the abstract idea of being articulated in the preamble, a computer with a CPU and then a program that does these eight or ten steps depending on what claims we're talking about. I suppose, presumably in some context, in some invention, I don't agree necessarily here, but that if you were to draft a claim that had aspects of providing tampering or providing security or providing last-minute buy-ins and providing specific methodologies on handling large volumes of players, perhaps, again, I'd have to look at the claim because that's what we're obligated to do, not the specification, not the commercial embodiment. But I don't want to categorically say, no, it can't be done because I'm a patent attorney myself and given enough time to sit down and noodle over disclosure and drafting claims, I will never put anything past the patent draftsman's art.  And our client's point of view is that these claims do not come anywhere close to capturing any of those features in the body of the claim. You have to go well into the specification, you have to go well into the commercial embodiment before you even come close to looking at these features. Yes, sir. I was going to ask, we've had now a number of cases dealing with not just the Bilski-type non-computer implemented claims, but claims that are computer implemented, and we've talked in general terms about the effect of adding a computer when it matters and when it doesn't for purposes of validity under 101. What is the line that you would draw between a claim that is valid because it has a computer implementation and a claim which is no more valid because it is computer implemented than it would be if it were not computer implemented? Well, the case law tells us that we're to look for something significantly more and add it. Significantly more. I know. Your Honor, I would be pleased to solve the conundrum of this jurisprudence. I, and we believe that, I know one thing. At one end of the spectrum, taking something that's known and used and out there in the world, vintage bingo, and hooking it up to a computer and running it on a computer doesn't meet that level of invention. No matter how many players there are? No matter how many players. 10,000 players. Well, if you have, you know, I really don't think so. A computer could do something that no human could possibly do. Under the case law that you were referring to that talked about, you know, the fact that a computer adds efficiency, that it adds the ability to process things so much quicker, that it adds the ability to handle so many more transactions, and that alone in and of itself is insufficient to confer patentability or patent eligibility under 101. You know, we think that that would. I guess this is the point I was trying to get at, and I'm not remembering the facts of those cases. There might be a distinction between activities that could be performed but slowly and activities that, unless you perform them at a speed that could be performed only by the computer, basically couldn't be conducted. You know, if you had a game in which nobody would ever conceive of playing the game unless it was at a speed that humans without computers could not effectuate. That might be different. That's what I guess I'm wondering. Yeah, and it might be, given the particular aspects of the invention, but I have not yet seen it in a case law. And I have not seen anything that would persuade me that simply taking a general-purpose computer, providing it with a specific program, and, you know, we're not disputing that this program has 150 pages. That to us is completely irrelevant. It's not a claim. The issue, you know, the question is whether doing that is enough to pass the threshold. Can I make a different hypothetical? I don't think it's particularly relevant to the facts here, but I think it might help at least me understand the distinction we're trying to draw between computer-assisted games that are patentable, and I don't know if you're familiar with the Wii video game system, but, you know, on a video game system, you can play bowling, and it's just bowling done on a computer, but it's done with sophisticated equipment and things like that. The equipment's obviously patentable, but is the description of the method of playing bowling on a computer something patentable? Perhaps, but if all it does is mimic what real bowlers do and simply encapsulate it in software, then I would suggest no. And I think that's what it does. I mean, I played it myself with my nephew, and you pick up a controller, you're looking at a video screen, you mimic the bowling motion, you can even do twists and turns, but spins on the ball, and on the computer screen, a ball comes down the lane and hits pins. And so, again, the equipment is very sophisticated and patentable, but I wondered if there was kind of a more general claim of this is how you do things, bowl on a computer, if that would be 101 eligible. Again, if you're taking just simply the game of bowling and putting it on a computer, I would say no, unless there's something that, and I'm not a programmer, so I don't know, frankly, what I don't know. And so there might be aspects to it that could merit patent protection, but the way you articulated it, Your Honor, I don't see it. Just doing it that way. One of the ideas that certainly occurred to me is that I think all of the cases in which we've said computer did not turn something ineligible into something eligible involve the computers taking steps that a human being would be taking, knowing these are the steps, consciously taken steps. That might be different for the bowling hypothetical, in that whatever the computer is doing to produce an image of a ball moving and having spin involves a lot of calculations that the bowler is not remotely doing in his head. That might be a different thing. It's not just having the computer take the very same mental steps that a person would do. The scenario here that we're talking about with the Wii, as Your Honor very correctly pointed out, there's a lot more to it than just the software. There's the interaction between the software and the hardware, and the hardware has a lot of innovation to it that allows that to happen. So it's complicated, and I'm thankful I don't have that case in front of me here today. Or something like computer face recognition software. We recognize faces intuitively without thinking about it. For a computer to do that, there's got to be a fantastic amount of detailed processing that maybe our brains do, but that we're not remotely aware of it's doing. Clearly the brains do that processing, it's just we don't think about it. But Your Honor, in this particular case, I think we do have a case that's clearly capable of being implemented by the human with a piece of paper once you get past the basic idea of playing a bingo game or managing a bingo game. That's what the district court analyzed it under. First he found that the computer implemented steps, as it were, were merely the usual basic, most fundamental operations of a computer. There was no change to the computer. There was no improvement to the computer. It was just a computer doing what a computer does. And under the precedence of this court and Supreme Court, that's not patentable. He then found, going through the analysis, that these are the various steps that were to be implemented by the computer could as easily be implemented by a human with a piece of paper and pencil. And as Your Honors noted earlier during the first part of the argument, the claim does call for only a player. And as a consequence, there's no barrier, whatever, to using paper and pencil to implement it. And finally, the use of a computer merely adds efficiency, which is, as we I think agree, is simply in itself insufficient to confer patentability. I have a little bit more if you would like to talk about it, but if you don't have any further questions, I'd be happy to conclude. Thank you, Your Honors. I'd just like to make a few points. Regarding the question as to what line would we draw because an invention has a computer limitation in it, is that it's important that it's computer implemented. We think it is important that the claims here are computer implemented and that they provide meaningful limitations on the scope of the claim. This isn't a situation like in Bilski where there was hedging against risk and there was no computer involved. This case does not involve just an abstract concept like that. How does it differ then from a case such as CyberSource that did involve a computer? Well, CyberSource, Your Honor, involved... That was the fraud detection algorithm. Correct. And I believe there it was actually conceded that the claims could be accomplished mentally and without the use of any computer at all. I believe the CEO in that case had conceded that point. And also I would note further that in that case there was no indication in the record, as far as I could tell, that there was any computer code submitted along with the application in that case. And we think that this case is distinguishable from CyberSource on those particular points and that the computer provides meaningful limitations on the scope of the claims here and that the code was important to the patentee's ability to be able to obtain these patents. This case is also different from a case like DealerTrack where that case didn't specify the level of involvement of the computer or detail. It's also different from Bancorp where the computer was programmed in an unspecified manner. Here we have a particular way that the program is to be performed. It's detailed in the specification and in the code. I think the example of bowling was a good one in that it showed what an abstract idea can be, play bowling on a computer. This case is not like that. We're not simply saying in the patents, play bingo with a computer. It's much more detailed than that. And I would submit that the computer is not simply just an add-on, not a mere appendage to the claims, but it does provide detail as to how this could be performed and it's important in carrying out the invention. Just as a final point, Your Honors, I note that the Supreme Court's term ends in just a couple weeks or so and that the awaited decision in CLS may well bear on the resolution of the issues in this case. So we would respectfully ask that the Court not make a decision here until after CLS is decided. Can I ask you just a closing question? Just to make sure I understand your position on the role of the computer here, vis-a-vis some of the cases we've talked about from this Court. You're not suggesting, I take it, but tell me if I'm wrong, that to use language from Fort Properties, that this is a case in which the invention itself involved advances in computer technology. That is to say, for example, to take the bowling example, it may have been an advance in computer technology to figure out how to depict a ball that's rolling and spinning but to the side at the same time on the display. You're not suggesting that there's anything about this patent that entails an advance in computer technology. It's an application of well-known and familiar computer functions, right? I don't necessarily agree with that, Your Honor, because the inventors here developed specific program codes that were not in existence in the prior art. There were computerized bingo games in the prior art but not one that could perform these specific functions in these specific ways. And we think that to that extent this was an advancement in computerized bingo technology. Maybe not computerized technology in general but with respect to the environment of bingo, we do think it was an advancement. Thank you, Your Honor.